No. 10-2347

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

LIBERTY UNIVERSITY; MICHELE G. WADDELL; and JOANNE V. MERRILL,

Plaintiffs-Appellants,

v.

JACOB J. LEW, in his official capacity as Secretary of the Treasury; KATHLEEN SEBELIUS,
in her official capacity as Secretary of Health and Human Services; SETH D. HARRIS, in his
official capacity as Acting Secretary of Labor; ERIC H. HOLDER, JR., in his official capacity as
Attorney General of the United States,

Defendants-Appellees.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

———————————————

**SUPPLEMENTAL BRIEF FOR THE APPELLEES**

———————————————

STUART F. DELERY
  *Acting Assistant Attorney General*

TIMOTHY J. HEAPHY
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
ALISA B. KLEIN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF FACTS ..................................................................2

    A.    Statutory Background..........................................................2

    B.    Prior Proceedings In This Case ..........................................5

SUMMARY OF ARGUMENT ...........................................................7

ARGUMENT ...................................................................................12

I.    The Anti-Injunction Act Bars This Pre-Enforcement Challenge
To The Employer Responsibility Provision ....................................12

    A.    Liberty University's Challenge To The Large-Employer
Tax Is Barred By The Plain Language Of The
Anti-Injunction Act ...........................................................12

    B.    Liberty University Also Lacks Standing To Challenge The
Large-Employer Tax That Is Authorized By Section 4980H .............16

II.    The Employer Responsibility Provision Is Authorized By
Congress's Taxing Power And, Independently, By Congress's
Commerce Power...........................................................................18

    A.    Section 4980H Is Authorized By Congress's Taxing Power.............18

    B.    Section 4980H Is Also Authorized By Congress's
Commerce Power ..............................................................24

    C.    Plaintiffs' Origination Clause and Severability Arguments
Are Not Before This Court..................................................28

III.    Plaintiffs' First Amendment And Equal Protection Challenges
To Sections 4980H And 5000A Are Meritless...............................29

A.    Section 4980H Does Not Burden Liberty University's
Exercise of Religion ................................................................29

B.    The Preventive Health Services Coverage Regulations
Do Not Implement Section 4980H And Are Not Before
The Court...................................................................................29

C.    Section 5000A Does Not Burden The Individual Plaintiffs'
Exercise Of Religion .............................................................31

D.    The Religious Exemptions In Section 5000A Do Not
Violate The Establishment Clause Or Deny Plaintiffs
Equal Protection ..................................................................36

CONCLUSION ..............................................................................39

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page**

*Adams v. Comm'r,*
170 F.3d 173 (3d Cir. 1999) ................................................................33

*Bailey v. Drexel Furniture,*
259 U.S. 20 (1922) (*Child Labor Tax Case*)...................................... 8, 22, 23, 24

*Bob Jones Univ. v. Simon,*
416 U.S. 725 (1974) ............................................................... 12, 13

*Browne v. United States,*
176 F.3d 25 (2d Cir. 1999) ................................................................33

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................35

*Clapper v. Amnesty International USA,*
133 S. Ct. 1138 (2013).................................................... 2, 8, 16, 17, 32

*Cutter v. Wilkinson,*
544 U.S. 709 (2005) ................................................................36

*Doremus v. Board of Education of the Borough of Hawthorne,*
342 U.S. 429 (1952) ................................................................33

*Droz v. Comm'r,*
48 F.3d 1120 (9th Cir. 1995) .......................................................... 33, 37

*Employment Div., Dep't of Human Res. v. Smith,*
494 U.S. 872 (1990) ................................................................35

*Enochs v. Williams Packing & Nav. Co.,*
370 U.S. 1 (1962) ............................................................... 12, 13

*Gonzales v. Raich,*
545 U.S. 1 (2005) ................................................................25

*Hammer v. Dagenhart,*
  247 U.S. 251 (1918) ...................................................................................24

*Harris v. McRae,*
  448 U.S. 297 (1980) ...................................................................................32

*Hatcher v. Commissioner,*
  688 F.2d 82 (10th Cir. 1979) ....................................................................37

*Jaggard v. Commissioner,*
  582 F.2d 1189 (8th Cir. 1978) .................................................................37

*Jenkins v. Comm'r,*
  483 F.3d 90 (2d Cir. 2007) .......................................................................33

*Liberty University, Inc. v. Geithner,*
  753 F. Supp. 2d 611 (W.D. Va. 2010)..................................... 6, 11, 25, 26, 27, 28,
                                                                                           29, 32, 35, 36, 38

*Liberty University, Inc. v. Geithner,*
  671 F.3d 391 (4th Cir. 2011) ..................................................... 6, 20, 21

*Liberty University, Inc. v. Geithner,*
  133 S. Ct. 60 (2012).................................................................................6

*Liberty University, Inc. v. Geithner,*
  133 S. Ct. 679 (2012)................................................................................7

*McCulloch v. Maryland,*
  17 U.S. (4 Wheat.) 316 (1819) ..............................................................25

*NFIB v. Sebelius,*
  132 S. Ct. 2566 (2012)........................................... 1, 2, 6, 7, 8, 10, 11,
                                                                               12, 13, 14, 15, 18, 19,
                                                                               20, 22, 23, 31, 32, 34

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) .....................................................................................25

*Olsen v. Commissioner of Internal Revenue,*
    709 F.2d 278 (4th Cir. 1983) ................................................................ 32, 33, 37

*U.S. Citizens Ass'n v. Sebelius,*
    705 F.3d 588 (6th Cir. 2013) ................................................................ 11, 33, 34

*United States v. Darby,*
    312 U.S. 100 (1941) ............................................................................ 24, 25

*United States v. Hudson,*
    673 F.3d 263 (4th Cir. 2012) ................................................................28

*United States v. Indianapolis Baptist Temple,*
    224 F.3d 627 (7th Cir. 2000) ................................................................33

*United States v. La Franca,*
    282 U.S. 568 (1931) ............................................................................19

*United States v. Lee,*
    455 U.S. 252 (1982) ............................................................................37

*United States v. Reorganized CF & I Fabricators of Utah, Inc.,*
    518 U.S. 213 (1996) ............................................................................ 8, 18, 19

*Varga v. United States,*
    467 F. Supp. 1113 (D. Md. 1979),
    *aff'd,* 618 F.2d 106 (table) (4th Cir. 1980) ....................................... 36, 37

*Wheaton College v. Sebelius,*
    703 F.3d 551 (D.C. Cir. 2012) ............................................................. 10, 31

**Statutes:**

26 U.S.C. § 36B(c)(2)(C) ...........................................................................4

26 U.S.C. § 1402(g)(1) ...............................................................................36

26 U.S.C. § 4980H .....................................................................................1, 3

26 U.S.C. § 4980H(a)............................................................................ 3, 4, 17

26 U.S.C. § 4980H(b)(1).......................................................................5, 21, 22

26 U.S.C. § 4980H(b)(2)...................................................................5, 14, 21, 22

26 U.S.C. § 4980H(c)(1)................................................................................4

26 U.S.C. § 4980H(c)(2)(D) .........................................................................4

26 U.S.C. § 4980H(c)(7)................................................................... 3, 7, 8, 14

26 U.S.C. § 4980H(d)(1)...........................................................................15

26 U.S.C. § 5000A...................................................................................1, 2

26 U.S.C. § 5000A(b) ...............................................................................13

26 U.S.C. § 5000A(d)(2)(A).......................................................................36

26 U.S.C. § 5000A(d)(2)(B).......................................................................36

26 U.S.C. § 5000A(f)(2) .........................................................................3, 17

26 U.S.C. § 5000A(f)(3) .............................................................................3

26 U.S.C. § 5000A(g)(1)...........................................................................15

26 U.S.C. § 5000A(g)(2)...........................................................................13

26 U.S.C. § 7421(a) .......................................................................... 1, 12, 13

28 U.S.C. § 2201 ......................................................................................13

29 U.S.C. § 621 et seq..............................................................................26

29 U.S.C. § 1001 et seq............................................................................26

42 U.S.C. § 300gg-13................................................................................ 10, 30

42 U.S.C. § 300gg-91.................................................................................3

42 U.S.C. § 2000e et seq.........................................................................26

42 U.S.C. § 12111 et seq.........................................................................26

42 U.S.C. § 18023(a)(1)..........................................................................34

42 U.S.C. § 18023(b)(1)(A).....................................................................34

42 U.S.C. § 18023(b)(2) .........................................................................34

Pub. L. No. 111-148, 124 Stat. 119 (2010)..............................................1

Pub. L. No. 111-152, 124 Stat. 1029 (2010)............................................1

Pub. L. No. 112-10, 125 Stat. 38 (2011)..................................................1

**Regulations:**

45 C.F.R. § 155.605(g) ...........................................................................31

77 Fed. Reg. 8725 (Feb. 15, 2012) .........................................................30

78 Fed. Reg. 218 (Jan. 2, 2013) ...............................................................4

78 Fed. Reg. 238 (Jan. 2, 2013) ...............................................................4

78 Fed. Reg. 7348-01 (Feb. 1, 2013) ......................................................31

78 Fed. Reg. 8456 (Feb. 6, 2013) ............................................................30

**Legislative Material:**

S. Rep. No. 89-404 (1965) .......................................................................37

# STATEMENT OF ISSUES

Pursuant to this Court's order, this supplemental brief addresses the following issues that are before this Court on remand from the Supreme Court for further consideration in light of *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012):

1. Whether the Anti-Injunction Act, 26 U.S.C. § 7421(a), bars this pre-enforcement challenge to the Affordable Care Act's employer responsibility provision, 26 U.S.C. § 4980H.[1]

2. Assuming arguendo that the Anti-Injunction Act does not apply, whether the employer responsibility provision is authorized by Congress's taxing power and, independently, by Congress's commerce power.

3. Whether plaintiffs' First Amendment and Equal Protection challenges to the employer responsibility provision and the minimum coverage provision, 26 U.S.C. § 5000A, are meritless.

---

[1] The "Affordable Care Act" refers to the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, and as further amended by the Department of Defense Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, 125 Stat. 38.

This supplemental brief also addresses issues of Article III standing that are presented in light of the Supreme Court's recent decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013).

## STATEMENT OF FACTS

### A.     Statutory Background

The Affordable Care Act amends the Internal Revenue Code in two ways relevant to this supplemental brief.  First, the Act provides that, beginning in 2014, a non-exempted individual who fails to maintain minimum essential coverage must make a specified payment to the Internal Revenue Service ("IRS").  *See* 26 U.S.C. § 5000A ("Section 5000A" or the "minimum coverage provision").[2]  In *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012), the Supreme Court held that the Anti-Injunction Act does not bar a pre-enforcement challenge to Section 5000A.  *See id*. at 2582-84.  Addressing the merits, the Supreme Court held that individuals have the "lawful choice" to make payment to the IRS under Section 5000A "in lieu of buying health insurance," *id*. at 2597, 2600, and the Court upheld Section 5000A as a valid exercise of Congress's taxing power.  *See id*. at 2593-2600.

Second, the Affordable Care Act amends the Internal Revenue Code to provide that, beginning in 2014, a large employer must make a payment to the IRS

---

[2] Section 5000A was added to the Internal Revenue Code by Section 1501 of the Affordable Care Act.

in specified circumstances.  *See* 26 U.S.C. § 4980H ("Section 4980H" or the

"employer responsibility provision").[3]  Section 4980H expressly refers to this

payment as a "tax."  *See*, *e.g.*, *id.* § 4980H(c)(7).

The amount of the large-employer tax depends on whether the tax is

imposed under subparagraph (a) or subparagraph (b) of Section 4980H.

Subparagraph (a) imposes a tax on a large employer that does not offer its full-time

employees and their dependents minimum essential coverage under an eligible

employer-sponsored plan, if one or more of the full-time employees receive a

federal premium tax credit or cost-sharing reduction for health coverage purchased

on a health insurance exchange.  Subparagraph (a) defines "minimum essential

coverage under an eligible employer-sponsored plan" to include coverage under

any employer-sponsored plan, with certain exceptions that are not relevant here.

*See* 26 U.S.C. § 4980H(a) (cross-referencing the definition of "minimum essential

coverage" under an "eligible employer-sponsored plan" in 26 U.S.C.

§ 5000A(f)(2)).[4]  If a tax is imposed under subparagraph (a), the employer's

---

[3] Section 4980H was added to the Internal Revenue Code by Section 1513 of
the Affordable Care Act.

[4] "Minimum essential coverage" does not include health coverage that
consists only of coverage of certain "excepted benefits," such as limited scope
vision or dental coverage.  *See* 26 U.S.C. § 5000A(f)(3) (cross-referencing
provisions of the Public Health Services Act codified at 42 U.S.C. § 300gg-91).
Liberty University does not allege that the health coverage it offers its full-time
employees consists only of coverage of such excepted benefits.

-3-

monthly tax liability is calculated by multiplying the number of full-time

employees (less 30) by $167. *See id.* § 4980H(a), (c)(1), (c)(2)(D).[5]

Subparagraph (b) of Section 4980H imposes a tax on a large employer that

offers its full-time employees and their dependents health coverage under an

eligible employer-sponsored plan, if that coverage is not affordable or does not

provide minimum value, and if one or more full-time employees receive a

premium tax credit or cost-sharing reduction for health coverage purchased on an

exchange. *See* 26 U.S.C. § 36B(c)(2)(C) (affordability and minimum value

criteria).[6] If a tax is imposed under subparagraph (b), the employer's monthly tax

liability is calculated by multiplying $250 by the number of full-time employees

---

[5] Proposed regulations under Section 4980H provide that "any employer that takes steps during its plan year that begins in 2014 toward satisfying the section 4980H provisions relating to the offering of coverage to full-time employees' dependents will not be liable for any assessable payment under section 4980H solely on account of a failure to offer coverage to the dependents for that plan year." *See* 78 Fed. Reg. 238 (Jan. 2, 2013). Proposed regulations under Section 4980H also provide that, for purposes of Section 4980H(a), an employer will be treated as offering coverage to all of its full-time employees (and their dependents) for a calendar month if it offers such coverage to all but five percent (or, if greater, five) of its full-time employees. *See id.* at 232-33, 250. Employers may rely on the proposed regulations pending issuance of final regulations or other guidance. *Id.* at 239.

[6] Proposed regulations under Section 4980H provide for several safe harbors for determining affordability for purposes of Section 4980H, including a safe harbor that allows an employer to ensure the affordability of its plan by relying on its employees' Form W-2 wage reports. *See* 78 Fed. Reg. 218, 219, 233-35 (Jan. 2, 2013). Employers may rely on the proposed regulations pending issuance of final regulations or other guidance. *Id.* at 239.

who receive a premium tax credit or cost-sharing reduction for health coverage purchased on an exchange. *See id*. § 4980H(b)(1). This tax liability is capped so that the "aggregate amount of tax" cannot exceed the amount the large employer would owe under subparagraph (a) if it did not offer its full-time employees and their dependents any health coverage at all. *See id*. § 4980H(b)(2).

### B.    Prior Proceedings In This Case

**1.** Plaintiff Liberty University brought this suit in its capacity as a large employer that "offers healthcare coverage to its full-time employees." Second Amended Complaint ¶ 62 (R.24). The University alleged that the employer responsibility provision exceeds Congress's Article I authority and violates the University's rights under the Free Exercise Clause, the Equal Protection Clause, and the Religious Freedom Restoration Act ("RFRA").

The two individual plaintiffs, Michele Waddell and Joanne Merrill, alleged that the minimum coverage provision exceeds Congress's Article I authority and violates their rights under the Free Exercise Clause, the Equal Protection Clause, and RFRA. They also alleged that the exemptions in the minimum coverage provision violate the Establishment Clause.[7]

---

[7] Plaintiffs also alleged other claims in the complaint, but those claims are not before this Court because plaintiffs did not raise them in their opening brief on their appeal from final judgment.

The district court rejected plaintiffs' claims on the merits and dismissed the complaint for failure to state a claim. *See Liberty University, Inc. v. Geithner*, 753 F. Supp. 2d 611 (W.D. Va. 2010). On plaintiffs' appeal, this Court held that the Anti-Injunction Act bars plaintiffs' pre-enforcement challenges to the minimum coverage provision and the employer responsibility provision. *See Liberty University, Inc. v. Geithner*, 671 F.3d 391 (4th Cir. 2011). This Court vacated the district court's judgment and remanded with instructions to dismiss the complaint for lack of jurisdiction. *See id*. at 397-98.

**2.** Plaintiffs filed a petition for a writ of certiorari, which the Supreme Court held pending its decision in *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012). The day after the Supreme Court issued its decision in *NFIB*, the Court denied the petition for a writ of certiorari in this case. *See* 133 S. Ct. 60 (2012).

Plaintiffs filed a petition for rehearing of the order denying certiorari. Their rehearing petition asked that the Supreme Court instead grant the certiorari petition, vacate this Court's decision, and remand the case for further consideration in light of *NFIB*. *See* 2012 WL 3027174 (rehearing petition). Plaintiffs' rehearing petition explained that such a remand would allow this Court to address their challenge to the employer responsibility provision, as well as their claim that the minimum coverage provision violates their rights under the First Amendment's

Free Exercise and Establishment Clauses and the Equal Protection component of the Fifth Amendment. *See id*. at *1.

The government did not oppose plaintiffs' request. *See* 2012 WL 5361525 (response to rehearing petition). The government advised the Supreme Court that, in its view, the Anti-Injunction Act bars this challenge to the employer responsibility provision, and that the claims of the University and the individual plaintiffs also have no merit. *See id*. at *3-4.

The Supreme Court granted plaintiffs' request and remanded the case to this Court for further consideration in light of *NFIB*. *See* 133 S. Ct. 679 (2012).

## SUMMARY OF ARGUMENT

This supplemental brief addresses the claims that are before this Court on remand from the Supreme Court for further consideration in light of *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012).

**I.** Liberty University, in its capacity as a large employer that offers its full-time employees health coverage, brought a pre-enforcement challenge to Section 4980H, which, beginning in 2014, will impose a tax on large employers if specified conditions are not met. This challenge to Section 4980H is barred by the plain terms of the Anti-Injunction Act, which divests the Court of jurisdiction to restrain the assessment or collection of a tax. The assessment that is authorized by Section 4980H is repeatedly described as a "tax." *See*, *e.g.*, 26 U.S.C.

§ 4980H(c)(7) (providing that the "tax imposed by" Section 4980H is nondeductible).  Accordingly, Liberty University's pre-enforcement challenge is barred by the "text of the pertinent statutes."  *NFIB*, 132 S. Ct. at 2582.

Moreover, in addition to the Anti-Injunction Act bar, it is speculative whether Liberty University will owe a tax under Section 4980H.  Thus, Liberty University cannot establish the "*certainly* impending" injury that is required to demonstrate an actual case or controversy under Article III.  *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013) (Supreme Court's emphasis).

**II.**  Assuming arguendo that the pre-enforcement challenge to Section 4980H is properly before the Court, this provision falls easily within Congress's taxing power and, independently, Congress's commerce power.  The validity of Section 4980H as an exercise of Congress's taxing power follows directly from the reasoning of *NFIB*.  The tax imposed by Section 4980H will raise revenue for the federal government, and it is not "'punishment for an unlawful act.'"  *NFIB*, 132 S. Ct. at 2596 (quoting *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 224 (1996)).  Plaintiffs' contrary argument rests on their misunderstanding of the way the large-employer tax is calculated, as well as their misunderstanding of the Supreme Court decision on which they rely, *Bailey v. Drexel Furniture*, 259 U.S. 20 (1922) (*Child Labor Tax Case*).

Section 4980H is also independently authorized by Congress's commerce power. Section 4980H addresses the health coverage benefits that large employers offer to their full-time employees and their dependents. It is well settled that the commerce power permits Congress to regulate the terms and conditions of employment.

Plaintiffs' supplemental brief also argues that the Affordable Care Act is void in its entirety because it was allegedly enacted in violation of the Origination Clause or because no provision could be severed from Section 4980H if that provision were invalid. These arguments are not properly before this Court. The purpose of the Supreme Court's remand is to permit this Court to consider the arguments that plaintiffs raised on their appeal from final judgment, but which this Court did not address because of its Anti-Injunction Act rulings. Plaintiffs' Supreme Court rehearing petition did not suggest that they would use the remand to raise new arguments, and the government consented to a remand on that basis. Accordingly, we do not address any arguments that were not raised in plaintiffs' opening brief on appeal.

**III.** Plaintiffs' First Amendment and Equal Protection challenges to Sections 4980H and 5000A are meritless. Liberty University asserts that the large-employer tax authorized by Section 4980H will burden its religious exercise by

requiring the University to subsidize abortion.  A cursory review of this provision shows that it has nothing to do with abortion.

In plaintiffs' supplemental brief, Liberty University also purports to challenge preventive health services coverage regulations that implement a different provision of the Affordable Care Act, 42 U.S.C. § 300gg-13.  This challenge was not raised below or on plaintiffs' appeal from final judgment, and it is not before the Court.  In any event, the challenge is unripe because the regulations are being amended to address religious objections raised by non-profit, religious organizations, and entities like Liberty University are protected by an enforcement safe harbor during the rulemaking.  *See Wheaton College v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012).

The allegations of the individual plaintiffs do not establish standing to challenge Section 5000A, much less demonstrate that this provision will impose a substantial burden on their exercise of religion or otherwise violate their constitutional rights.  In *NFIB*, the Supreme Court held that individuals lawfully may choose to make payment to the IRS under Section 5000A "in lieu of buying health insurance." *NFIB*, 132 S. Ct. at 2597.  Individuals with income below a certain threshold are exempt from this payment, and proposed regulations also authorize hardship exemptions.  The allegations in the complaint do not show that either individual plaintiff will be required to make a shared responsibility payment

if she chooses not to obtain health coverage.  Thus, the allegations do not show that Section 5000A will cause either individual a certainly impending injury.

The individual plaintiffs' challenges to Section 5000A also fail on the merits.  Although the asserted basis for their claims is their objection to subsidizing abortion, they "fail to allege how any payments required under the Act . . . would be used to fund abortion."  *Liberty University*, 753 F. Supp. 2d at 642.  If the individual plaintiffs prefer to make the shared responsibility payment rather than purchase health coverage, that is their "lawful choice."  *NFIB*, 132 S. Ct. at 2600. The requirement that an individual make payment to the IRS in this circumstance is not an infringement on religious exercise or any other constitutional right.  *See U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 597-603 (6th Cir. 2013) (rejecting First Amendment and Due Process challenges to Section 5000A in light of the Supreme Court's reasoning in *NFIB*).  Likewise, the religious exemptions in Section 5000A do not violate the Establishment Clause or deny the individual plaintiffs equal protection.

## ARGUMENT

**I.**   **The Anti-Injunction Act Bars This Pre-Enforcement Challenge To The Employer Responsibility Provision.**

**A.**   **Liberty University's Challenge To The Large-Employer Tax Is Barred By The Plain Language Of The Anti-Injunction Act.**

Liberty University, in its capacity as a large employer, seeks to enjoin the assessment and collection of the large-employer tax that is authorized by Section 4980H.  This pre-enforcement challenge to Section 4980H is barred by the Anti-Injunction Act.

The Anti-Injunction Act provides, with statutory exceptions inapplicable here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a).  "This statute protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *NFIB*, 132 S. Ct. at 2582.  "Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Ibid.* (citing *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7–8 (1962)); *see also Bob Jones Univ. v.*

-12-

*Simon*, 416 U.S. 725, 736 (1974). When the Anti-Injunction Act applies, it divests the Court of subject-matter jurisdiction. *See Williams Packing*, 370 U.S. at 5.[8]

In *NFIB*, the Supreme Court held that the Anti-Injunction Act does not bar a pre-enforcement challenge to the minimum coverage provision. In so ruling, the Court relied on the "text of the pertinent statutes." *NFIB*, 132 S. Ct. at 2582. The Court stressed that the Anti-Injunction Act "applies to suits 'for the purpose of restraining the assessment or collection of any *tax*.'" *Ibid*. (quoting 26 U.S.C. § 7421(a)) (Supreme Court's emphasis). "Congress, however, chose to describe the '[s]hared responsibility payment' imposed on those who forgo health insurance not as a 'tax,' but as a 'penalty.'" *Id*. at 2583 (quoting 26 U.S.C. § 5000A(b), (g)(2)). The Court reasoned that "Congress's decision to label this exaction a 'penalty' rather than a 'tax' is significant because the Affordable Care Act describes many other exactions it creates as 'taxes.'" *Ibid*. (citation omitted). "Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *Ibid*. (citation omitted).

---

[8] The Declaratory Judgment Act also excepts from its coverage suits for declaratory relief "with respect to Federal taxes." 28 U.S.C. § 2201. That exception "is at least as broad as the Anti-Injunction Act." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974).

This reasoning leaves no doubt that the Anti-Injunction Act bars Liberty University's pre-enforcement challenge to the employer responsibility provision. In contrast to the minimum coverage provision, the employer responsibility provision repeatedly uses the term "tax" to describe the amount that a large employer will owe the IRS under the conditions described in the statute. Section 4980H(b)(2) places a cap on the "aggregate amount of tax" that an employer may owe under that provision. Section 4980H(c)(7) provides that the "tax imposed by" Section 4980H is "nondeductible." And Section 4980H(c)(7) cross-references Section 275(a)(6) of the Internal Revenue Code, which provides that no tax deduction is allowed for "[t]axes imposed by chapters 41, 42, 43, 44, 45, 46, and 54." The "tax" imposed by the employer responsibility provision is nondeductible because it is one of the "[t]axes imposed by" chapter 43. *Ibid*. Although Section 4980H also uses the terms "assessable payment" and "assessable penalties," its repeated use of the term "tax" readily distinguishes the provision from Section 5000A.

Plaintiffs' contention that the language of Section 4980H is "virtually identical" to the language of Section 5000A, Pl. Supp. Br. 15, disregards the critical respect in which the language of the two sections is not identical: Section 4980H repeatedly refers to the imposition of a "tax," whereas Section 5000A conspicuously lacks any such reference. The relevant "text of the

pertinent statutes," *NFIB*, 132 S. Ct. at 2582, thus establishes that a pre-enforcement challenge to the "tax" imposed by Section 4980H is barred by the Anti-Injunction Act.

Ignoring the crucial differences in the language of the two provisions, plaintiffs observe that Section 4980H establishes procedures for the assessment and collection of the large-employer tax that are similar to the procedures by which the Section 5000A payment will be assessed and collected. *See* Pl. Br. 15-16 (citing 26 U.S.C. §§ 4980H(d)(1), 5000A(g)(1)). In *NFIB*, however, the Supreme Court agreed with the federal government that "§ 5000A(g) is a directive only to the Secretary of the Treasury to use the same "'methodology and procedures'" to collect the penalty that he uses to collect taxes." *NFIB*, 132 S. Ct. at 2583 (citations omitted).

This provision "specif[ies] the means by which" the Secretary of the Treasury may collect payment. *Id*. at 2584. The directive to use the procedures that are used to collect taxes is not sufficient to bring the Section 5000A payment within the scope of the Anti-Injunction Act, which "says nothing about the procedures to be used in assessing and collecting taxes." *Ibid*. In the case of the employer responsibility provision, the procedures will, in fact, be used to collect what Congress has expressly designated as a tax.

-15-

If, in 2014 or thereafter, Liberty University is assessed a large-employer tax, the University will be able to assert any legal challenges in a refund action. It cannot, however, seek to enjoin the application of the statute before paying the hypothetical assessment.

### B.   Liberty University Also Lacks Standing To Challenge The Large-Employer Tax That Is Authorized By Section 4980H.

Independent of the Anti-Injunction Act bar, this Court lacks jurisdiction to consider Liberty University's claims because the University has failed to demonstrate standing to challenge the employer responsibility provision. It is speculative whether Liberty University will owe any tax under Section 4980H, which does not go into effect until 2014. The University cannot show a "*certainly impending*" injury that is necessary for Article III standing. *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013) (Supreme Court's emphasis).

Liberty University "offers healthcare coverage to its full-time employees." Second Amended Complaint ¶ 62. Assuming (as the complaint suggests) that this offer of coverage extends to the dependents of full-time employees, *see id*. ¶ 29, the University should not face tax liability under subparagraph (a) of Section 4980H. Subparagraph (a) imposes a tax on a large employer that "fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month," if one or more full-time employees

receive a premium tax credit or cost-sharing reduction for coverage purchased on a health insurance exchange.  26 U.S.C. § 4980H(a).  Section 5000A(f), in turn, defines "minimum essential coverage" under an "eligible employer-sponsored plan" to include coverage under any employer-sponsored plan, with limited exceptions not relevant here.  *Id*. § 5000A(f)(2).[9]  Therefore, the coverage that Liberty University offers should qualify as minimum essential coverage.

Plaintiffs suggest that Liberty University may face tax liability under subparagraph (b) of Section 4980H, but that possibility is speculative. Subparagraph (b) imposes a tax on a large employer that offers coverage to its full-time employees (and their dependents), *if* the plan does not meet certain affordability or minimum value criteria and *if* one or more full-time employees receive a premium tax credit or cost-sharing reduction for coverage purchased on a health insurance exchange.  Although plaintiffs allege that Liberty University's coverage "could be . . . deemed unaffordable" for purposes of subparagraph (b), Second Amended Complaint  ¶ 62,  that possibility does not establish a "*certainly impending*" injury.  *Clapper*, 133 S. Ct. at 1147.[10]

---

[9] As noted above, minimum essential coverage does not include coverage that consists of certain "excepted benefits," such as limited scope vision or dental coverage.  *See* n.4, *supra*.  Liberty University does not allege that its health coverage consists of coverage of such excepted benefits.

[10] As noted above, proposed regulations under Section 4980H provide for several safe harbors for determining affordability for purposes of Section 4980H,

*Continued on next page.*

Moreover, even if Liberty chooses to offer health coverage to its full-time employees and their dependents that does not meet the affordability criteria, the University would face tax liability under subparagraph (b) only if one or more of its full-time employees receive a premium tax credit or cost-sharing reduction for coverage purchased on a health insurance exchange.  Liberty University's conjectural injury is thus twice removed from the level of certainty required to establish an actual case or controversy.

## II.    The Employer Responsibility Provision Is Authorized By Congress's Taxing Power And, Independently, By Congress's Commerce Power.

Assuming for the sake of argument that Liberty University's pre-enforcement challenge to the employer responsibility provision is properly before the Court, the challenge fails on the merits because Section 4980H is authorized by Congress's taxing power and, independently, by Congress's commerce power.

### A.  Section 4980H Is Authorized By Congress's Taxing Power.

**1.**  The validity of Section 4980H as an exercise of Congress's taxing power follows from the Supreme Court's reasoning in *NFIB*.  There, the Court explained that, "[i]n distinguishing penalties from taxes," the relevant question is whether an exaction imposes "'punishment for an unlawful act or omission.'"  132 S. Ct. at 2596 (quoting *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518

including a safe harbor that allows an employer to ensure the affordability of its plan by relying on its employees' Form W-2 wage reports.  *See* n.6, *supra*.

U.S. 213, 224 (1996)); *see also ibid*. ("'[A] penalty, as the word is here used, is an

exaction imposed by statute as punishment for an unlawful act.'") (quoting *United

States v. La Franca,* 282 U.S. 568, 572 (1931)).

The Supreme Court held that the assessment in Section 5000A is not

punishment for an unlawful act or omission, even though Congress described the

assessment "as a 'penalty,' not a 'tax,'" *id*. at 2594, and even though

Section 5000A states that an individual "'shall' maintain health insurance." *Id*. at

2593. The Supreme Court reasoned that, although Section 5000A "clearly aims to

induce the purchase of health insurance, it need not be read to declare that failing

to do so is unlawful." *Id*. at 2596-97. The Court emphasized that "[n]either the

Act nor any other law attaches negative legal consequences to not buying health

insurance, beyond requiring a payment to the IRS." *Id*. at 2597. And the Court

explained that "[t]his process yields the essential feature of any tax: it produces at

least some revenue for the Government." *Id*. at 2594 (noting the Congressional

Budget Office ("CBO") estimate that the Section 5000A payment is expected to

raise about $4 billion per year by 2017).

Whereas Congress described the exaction in Section 5000A "as a 'penalty,'

not a 'tax,'" *id*. at 2594, Congress repeatedly referred to the payment in

Section 4980H as a "tax." *See* p.14, *supra*. And, whereas Section 5000A states

that an individual "shall" maintain a minimum level of health coverage, *see NFIB*,

-19-

132 S. Ct. at 2593, there is no comparable directive in Section 4980H.  Thus, by its terms, Section 4980H does not make a large employer's failure to offer coverage "unlawful."  *Id.* at 2597.  Indeed, plaintiffs' description of Section 4980H as an "employer mandate" is a misnomer.  There is no "mandate" in Section 4980H— there is only a tax.

Like Section 5000A, Section 4980H has "the essential feature of any tax: it produces at least some revenue for the Government."  *Id.* at 2594.  The CBO projected that the large-employer tax will raise $11 billion per year.  *See Liberty University*, 671 F.3d at 419 (Wynn, J., concurring).  The employer responsibility provision is thus a valid exercise of Congress's taxing power.  *See id.* at 419-20.

**2.**  Plaintiffs' contrary argument rests on their misunderstanding of the way the large-employer tax is calculated, as well as their misunderstanding of the Supreme Court precedent on which they rely.

Plaintiffs assert that, under subparagraph (b) of Section 4980H, "if even one of perhaps thousands of employees seeks a tax credit or subsidy because the employee portion of the premium is more than 9.5 percent of the employee's household income (the Administration's definition of 'affordable')," then the employer's annual tax liability would be calculated by multiplying $3,000 by "the number of full-time employees."  Pl. Supp. Br. 28.  Plaintiffs declare that, under this hypothetical scenario, Liberty University, which employs "6,900 people,"

would owe "$20,700,000 ($3,000 x 6,900) if only *one* employee meets the 9.5 percent 'unaffordable' criteria." Pl. Supp. Br. 30 (plaintiffs' emphasis). They assert that this tax would be owed "on top of" the $13,800,000 tax ($2,000 x 6,900) that Liberty University would owe under subparagraph (a), "for a combined penalty of $34,500,000!" Pl. Supp. Br. 30.

Plaintiffs' calculations bear no relation to the tax actually authorized by Section 4980H. First, Liberty University represents that it offers health coverage to its full-time employees. *See* Second Amended Complaint ¶ 62. Assuming (as the complaint suggests) that this offer of coverage extends to the dependents of full-time employees, *see id.* ¶ 29, there is no reason to believe that the University will owe any tax under subparagraph (a).

Second, as this Court's prior decision makes clear, plaintiffs' calculation of potential tax liability under subparagraph (b) is off by several orders of magnitude. *See Liberty University*, 671 F.3d at 399. A large employer may face a tax assessment if its coverage fails to satisfy the affordability or minimum value criteria and if one or more of its full-time employees receive a premium tax credit or cost-sharing reduction for coverage purchased on an exchange. In that case, the employer's tax liability "is calculated by multiplying $3,000 by the number of employees receiving the 'applicable premium tax credit or cost-sharing reduction,' prorated on a monthly basis and subject to a cap." *Ibid.* (citing 26 U.S.C.

-21-

§ 4980H(b)(1), (2)).  Thus, under plaintiffs' hypothetical scenario—in which one full-time employee receives a premium tax credit or cost-sharing reduction on an exchange—Liberty's total tax liability for the year would be calculated by multiplying $3,000 by one employee.  Its annual tax liability would thus total $3,000—not $34,500,000.  Moreover, as this Court noted, the tax liability is applied on a monthly basis so that, under plaintiffs' hypothetical scenario, the University would accrue tax liability at a rate of $250 per month.[11]

Plaintiffs also misunderstand the Supreme Court decision on which they rely, *Bailey v. Drexel Furniture*, 259 U.S. 20 (1922) (*Child Labor Tax Case*).  The *Drexel Furniture* Court did not suggest that a tax might be invalidated by calculating potential tax liability under various hypothetical scenarios.  In *Drexel Furniture*, "three practical characteristics of the so-called tax on employing child laborers" convinced the Court that "the 'tax' was actually a penalty."  *NFIB*, 132 S. Ct. at 2595.  "First, the tax imposed an exceedingly heavy burden—10 percent of a company's net income—on those who employed children, no matter how small their infraction."  *Ibid*.  "Second, it imposed that exaction only on those who

---

[11] Plaintiffs' calculations also contain other errors.  The taxes imposed under subparagraphs (a) and (b) are not cumulative.  Moreover, the tax in subparagraph (a) is calculated by reference to the number of full-time employees, not by reference to the number of "people" employed.  Pl. Supp. Br. 30.  And an employer's tax liability under subparagraph (b) is capped such that it cannot exceed the amount the employer would owe if it did not offer any coverage to its full-time employees and their dependents.  *See* 26 U.S.C. § 4980H(b)(2).

knowingly employed underage laborers." *Ibid*. "Such scienter requirements are typical of punitive statutes, because Congress often wishes to punish only those who intentionally break the law." *Ibid*. "Third, this 'tax' was enforced in part by the Department of Labor, an agency responsible for punishing violations of labor laws, not collecting revenue." *Ibid*. (citing *Drexel Furniture*, 259 U.S. at 36-37).

The taxes in Section 4980H have none of these characteristics. Section 4980H has no scienter requirement. The taxes are assessed and collected by the IRS. And, as discussed above, plaintiffs' assertion that the tax in subparagraph (b) is "'not to be proportioned in any degree to the extent or frequency of the departures,'" Pl. Supp. Br. 28 (quoting *Drexel Furniture*, 259 U.S. at 36), reflects their basic misunderstanding of the way the tax is calculated. The child labor tax required an employer to pay "one-tenth of his entire net income in the business for a full year," and to make that payment "in full measure whether he employs 500 children for a year, or employs only one for a day." *Drexel Furniture*, 259 U.S. at 36. By contrast, if the coverage that a large employer offers its full-time employees and their dependents does not meet the affordability or minimum value criteria for "only one" full-time employee, *ibid*., and if that employee receives a premium tax credit or cost-sharing reduction for health coverage purchased on an exchange, the annual tax liability will be calculated by

-23-

multiplying $3,000 by "only one," *ibid.*, and it will be applied on a monthly basis so that the employer will accrue tax liability at a rate of $250 per month.

**B.  Section 4980H Is Also Authorized By Congress's Commerce Power.**

The employer responsibility provision is also independently authorized by Congress's commerce power.  Plaintiffs' contrary argument reflects a mode of analysis that the Supreme Court rejected more than 70 years ago.

In *Drexel Furniture*, the Supreme Court held that Congress's commerce power did not authorize it to impose a tax on employers that use child laborers. *See Drexel Furniture*, 259 U.S. at 39.  The Court based that holding on *Hammer v. Dagenhart*, 247 U.S. 251 (1918), which held that the authority "'to regulate the hours of labor of children in factories and mines within the states'" was "'a purely state authority.'"  *Ibid.* (quoting *Dagenhart*, 247 U.S. at 276).

Subsequently, the Supreme Court overruled *Hammer v. Dagenhart* and rejected the mode of analysis on which that case relied.  *See United States v. Darby*, 312 U.S. 100, 116-117 (1941).  The Supreme Court emphasized that "[t]he power of Congress over interstate commerce is not confined to the regulation of commerce among the states."  *Id*. at 118.  "It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate

commerce." *Id*. at 118-119 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819)).

Under the modern doctrine, Congress has broad authority to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich,* 545 U.S. 1, 17 (2005). In reviewing an Act of Congress, a court's "task . . . is a modest one." *Id.* at 22. A court "need not determine whether [the regulated] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Ibid.* (citation omitted).

Section 4980H addresses the health coverage benefits that large employers offer to their full-time employees and their dependents. Health coverage benefits form part of an employee's compensation package, and "it is well-established in Supreme Court precedent that Congress has the power to regulate the terms and conditions of employment." *Liberty University*, 753 F. Supp. 2d at 635 (citing, *e.g.*, *United States v. Darby,* 312 U.S. 100 (1941) (upholding the Fair Labor Standards Act ("FLSA"), which requires certain employers to pay their employees a minimum wage and to pay overtime wages for work in excess of a statutorily-specified amount of hours); and *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 33–43 (1937) (upholding the National Labor Relations Act of 1935 ("NLRA"),

which prohibits unfair labor practices and restricts employer interference with union membership)).

In addition to regulating minimum wages and overtime pay in the FLSA, Congress regulates employee benefits such as health care benefits, pensions, disability benefits, and life insurance benefits through the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and other statutes. Other federal laws provide protection against employment discrimination. For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., bars employment discrimination on the basis of race, color, religion, sex, or national origin. The Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., bars employment discrimination on the basis of disability, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., bars employment discrimination on the basis of age.

Plaintiffs do not question the validity of these longstanding federal statutes, and it is just as clearly within Congress's power to encourage large employers to offer their full-time employees and their dependents health coverage benefits by imposing a tax on large employers that fail to do so. "The opportunity provided to an employee to enroll in an employer-sponsored health care plan is a valuable benefit offered in exchange for the employee's labor, much like a wage or salary." *Liberty University*, 753 F. Supp. 2d at 635. "Plaintiffs' depiction of the employer

coverage provision as requiring employers to purchase a product against their will is misleading; the employer coverage requirement is more accurately described as regulating the terms of the employment contract." *Id*. at 635-36. "Employers regulated under [Section 4980H] are already engaged in commerce—that employers need to arrange with third party insurers to offer such coverage to their employees is of no consequence." *Id*. at 636.

Nor is there any doubt that a "rational basis exists for Congress to conclude that the terms of health coverage offered by employers to their employees have substantial effects cumulatively on interstate commerce." *Ibid*. "Maintaining adequate health care coverage is among the foremost concerns of employees when considering whether to take advantage of better job opportunities." *Ibid*. The CBO found that "'[j]ob lock' occurs when a worker declines to accept a better job because taking the new job requires giving up the worker's current health plan, and he fears he will be unable to obtain a comparable one." *Ibid*. (citing CBO, *Key Issues in Analyzing Major Health Insurance Proposals* 8, 164-165 (2008)). "In this way, the interstate economy is impeded by the failure of certain large employers to offer adequate health care coverage." *Ibid*. The provision of health coverage substantially affects commerce just as other forms of compensation and terms of employment do, and the businesses run by large employers likewise

substantially affect commerce. "Accordingly, the employer coverage provision is a lawful exercise of Congress' Commerce Clause power." *Ibid.*

### C. Plaintiffs' Origination Clause and Severability Arguments Are Not Before This Court.

Plaintiffs' supplemental brief argues that the Affordable Care Act was enacted in violation of the Constitution's Origination Clause, and that the entire Act is therefore invalid. *See* Pl. Supp. Br. 33-36. Similarly, they argue that the entire Act is invalid on the theory that, if Section 4980H were beyond Congress's authority to enact, the provision could not be severed from any other provision of the Affordable Care Act. *See* Pl. Supp. Br. 60-61.

These arguments are not properly before the Court, and we do not address them here. The Supreme Court's remand permits this Court to address the arguments that plaintiffs raised on their appeal from final judgment, but which this Court did not address because of its Anti-Injunction Act rulings. Plaintiffs' rehearing petition in the Supreme Court did not suggest that plaintiffs would use a remand to raise new arguments that they had not previously made on their appeal, *see* 2012 WL 3027174 (plaintiffs' rehearing petition), and the government consented to the rehearing request on that basis. Any issues that plaintiffs did not raise in their opening brief on appeal from final judgment were waived. *See*, *e.g.*, *United States v. Hudson*, 673 F.3d 263, 268 (4th Cir. 2012).

III.    **Plaintiffs' First Amendment And Equal Protection Challenges To Sections 4980H And 5000A Are Meritless.**

A.    **Section 4980H Does Not Burden Liberty University's Exercise of Religion.**

Assuming that the issue is properly before the Court, Liberty University has "not raised a plausible claim" that Section 4980H "burdens religious practice." *Liberty University*, 753 F. Supp. 2d at 642. The premise of the University's free exercise and RFRA claims is that Section 4980H will require the University to subsidize or otherwise support abortions. *See* Second Amended Complaint ¶ 73. But, by its plain terms, Section 4980H has nothing to do with abortion coverage.

Plaintiffs mistakenly assert that the coverage that Liberty University offers its full-time employees and their dependents cannot qualify as "minimum essential coverage under an eligible employer-sponsored plan" within the meaning of Section 4980H unless the coverage includes abortions. But, as explained above, the quoted phrase is a term of art that is defined by cross-reference to Section 5000A(f)(2) and that does not require abortion coverage.

B.    **The Preventive Health Services Coverage Regulations Do Not Implement Section 4980H And Are Not Before The Court.**

In plaintiffs' supplemental brief, Liberty University also purports to challenge regulations that require a non-exempt, non-grandfathered group health plan to cover "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all

-29-

women with reproductive capacity, as prescribed by a provider."  77 Fed. Reg.

8725, 8725 (Feb. 15, 2012) (internal quotation marks omitted).  Contrary to

plaintiffs' understanding, *see* Pl. Supp. Br. 2-3, the preventive health services

regulations do not implement Section 4980H.  They instead implement the

Affordable Care Act provision that amended the Public Health Service Act to

require that non-grandfathered plans cover recommended preventive health

services without cost sharing.  *See* 42 U.S.C. § 300gg-13.[12]  This independent

provision was not challenged below; it was not at issue on plaintiffs' appeal from

final judgment, and it is not before this Court on remand from the Supreme Court.

  In any event, Liberty University's challenge to the contraceptive-coverage

requirement is unripe.  The Departments that issued the preventive health services

coverage regulations are in the midst of a rulemaking to address religious

objections to the provision of contraceptive coverage that have been raised by non-

profit, religious organizations.  *See* 78 Fed. Reg. 8456, 8461 (Feb. 6, 2013) (notice

of proposed rulemaking).  Non-profit organizations like Liberty University have

the protection of an enforcement safe harbor during the rulemaking process.  *See*

77 Fed. Reg. 8725, 8727 (Feb. 15, 2012).  Challenges to the contraceptive-

_____

  [12] Section 300gg-13 was added to the Public Health Service Act by
Section 1001 of the Affordable Care Act.

-30-

coverage requirement brought by such entities are therefore unripe.  *See Wheaton College v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012).

### C. Section 5000A Does Not Burden The Individual Plaintiffs' Exercise Of Religion.

The allegations of the individual plaintiffs do not establish standing to challenge Section 5000A, much less demonstrate that this provision will impose a substantial burden on their exercise of religion.

**1.**  In *NFIB*, the Supreme Court held that individuals may choose to make the shared responsibility payment to the IRS under Section 5000A "in lieu of buying health insurance."  *NFIB*, 132 S. Ct. at 2597.  Individuals with income below a certain threshold are exempt from this payment.  *See id.* at 2580. Moreover, individuals may be exempt under various hardship exemptions that have been proposed in HHS regulations.  *See* 78 Fed. Reg. 7348-01 (Feb. 1, 2013) (proposed 45 C.F.R. § 155.605(g)).

The allegations of the complaint do not address these exemptions or otherwise show that either individual plaintiff will be required to make a payment if she does not have health coverage when Section 5000A takes effect in 2014. The complaint alleges only that Ms. Waddell is "not presently employed" and provides no information with respect to Ms. Merrill's income or employment. Second Amended Complaint ¶¶ 34, 38.  The allegations thus fail to show that

Section 5000A will cause either individual plaintiff a certainly impending injury. *See Clapper*, 133 S. Ct. at 1147.

**2.** Nor do the allegations state a free exercise claim. The individual plaintiffs allege that they object to subsidizing or otherwise supporting abortions, but they "fail to allege how any payments required under the Act . . . would be used to fund abortion." *Liberty University*, 753 F. Supp. 2d at 642; *see also id*. at 643 (dismissing the RFRA claim because plaintiffs' "conclusory allegations" do not establish a substantial burden on their exercise of religion).

Under the holding of *NFIB*, if the individual plaintiffs prefer to make payment to the federal treasury rather than purchase health coverage, that is their "lawful choice." *NFIB*, 132 S. Ct. at 2600. A payment made to the IRS and deposited into the federal treasury is not "mandatory participation in payment for abortion services." Pl. Supp. Br. 52.

Federal law prohibits the use of federal funds to pay for abortions except where the pregnancy results from rape or incest or the life of the pregnant woman is at stake. *See Harris v. McRae*, 448 U.S. 297, 302 (1980) (discussing the Hyde Amendment). But, even if federal funds are used to pay for abortions of which the individual plaintiffs disapprove, "[t]axpayers generally are not permitted to avoid payment of a tax when their objections concern the manner in which government revenues are expended." *Olsen v. Commissioner of Internal Revenue*, 709 F.2d

278, 282 (4th Cir. 1983) (citing cases). "[T]he interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure." *Doremus v. Board of Education of the Borough of Hawthorne*, 342 U.S. 429, 433 (1952). It is "well settled that the collection of tax revenues for expenditures that offend the religious beliefs of individual taxpayers does not violate the Free Exercise Clause of the First Amendment." *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007); *see also*, *e.g.*, *United States v. Indianapolis Baptist Temple*, 224 F.3d 627 (7th Cir. 2000); *Adams v. Comm'r*, 170 F.3d 173 (3d Cir. 1999); *Browne v. United States*, 176 F.3d 25 (2d Cir. 1999); *Droz v. Comm'r*, 48 F.3d 1120 (9th Cir. 1995).

In light of *NFIB*'s holding that individuals have the lawful choice to make payment under Section 5000A rather than purchase health coverage, the Sixth Circuit rejected claims that Section 5000A violates individuals' First Amendment freedom of association or Fifth Amendment right to privacy. *See U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 597-603 (6th Cir. 2013). The *U.S. Citizens* plaintiffs argued that Section 5000A will infringe upon their freedom of association by requiring them to associate with insurance companies of which they disapprove. *See id.* at 598. The Sixth Circuit explained that, even apart from the other flaws in this claim, the plaintiffs "are not required to obtain health insurance

and associate with health insurers at all; they may choose to pay the shared responsibility payment instead." *Id*. at 600 (citing *NFIB*, 132 S. Ct. at 2597 ("[I]f someone chooses to pay rather than obtain health insurance, they have fully complied with the law.")).

Similarly, the Sixth Circuit in *U.S. Citizens* rejected the plaintiffs' contention that Section 5000A violates their constitutional right to privacy by requiring them "to disclose personal medical information to insurance companies." *Id*. at 602. The Sixth Circuit emphasized that the plaintiffs "can avoid any privacy concern altogether by simply foregoing insurance and complying with the individual mandate by making the shared responsibility payment." *Ibid*.

Here, too, the individual plaintiffs can avoid whatever concerns they may have with obtaining health coverage by making the generally applicable shared responsibility payment instead. Thus, Section 5000A does not implicate plaintiffs' exercise of religion.[13]

---

[13] We note that plaintiffs are mistaken to assert that they will be unable to choose a plan that does not cover abortion. The Affordable Care Act provides that no qualified health plan is required to cover abortions, and the Act also permits a state to prohibit abortion coverage in qualified health plans sold on a health insurance exchange. *See* 42 U.S.C. § 18023(a)(1), (b)(1)(A). Plaintiffs are likewise incorrect to assert that 42 U.S.C. § 18023(b)(2) requires that "individuals and employers pay at least one dollar per person per month directly into an account to cover elective abortions." Pl. Supp. Br. 37. This provision applies only if individuals choose to enroll in a qualified health plan through a health insurance exchange that chooses to cover abortions for which federal funding may not be

*Continued on next page.*

-34-

**3.** Plaintiffs also cannot state a claim under the Free Exercise Clause because the Free Exercise Clause "does not excuse individuals from compliance with neutral laws of general applicability." *Liberty University*, 753 F. Supp. 2d at 641-42 (citing *Employment Div., Dep't of Human Res. v. Smith,* 494 U.S. 872, 878–79 (1990)). "Neutrality and general applicability are interrelated," and "failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). A law is not neutral "if the object of a law is to infringe upon or restrict practices because of their religious motivation." *Id*. at 533. A law is not generally applicable if it "in a selective manner impose[s] burdens only on conduct motivated by religious belief." *Id*. at 543.

Contrary to plaintiffs' assertion, the religious exemptions in Section 5000A do not disfavor religion. Rather, as discussed below, the religious exemptions are permissible measures that accommodate religious practices to the extent consistent with the objectives of the Act. *See Liberty University*, 753 F. Supp. 2d at 641-42.

---

used. The provision ensures that federal funds are not used for abortions for which federal funding is prohibited.

**D.     The Religious Exemptions In Section 5000A Do Not Violate The Establishment Clause Or Deny Plaintiffs Equal Protection.**

The Supreme Court has "'long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause.'" *Liberty University*, 753 F. Supp. 2d at 638 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 713 (2005) (other citations omitted)).  Two exemptions in Section 5000A make such accommodations.

The "health care sharing ministry" exemption applies to members of tax exempt organizations that, among other things, have since 1999 shared a common set of ethical or religious beliefs and shared medical expenses among their members in accordance with those beliefs, and that allow individuals to retain membership even after they develop a medical condition.  *See* 26 U.S.C. § 5000A(d)(2)(B).  The "religious conscience" exemption incorporates a longstanding provision of the Internal Revenue Code that applies to individuals who adhere to established tenets or teachings of religious sects in existence since 1950 that are conscientiously opposed to acceptance of the benefits of any private or public insurance.  *See* 26 U.S.C. § 5000A(d)(2)(A) (incorporating the definition of "religious sect" in 26 U.S.C. § 1402(g)(1)).  Section 1402(g)(1) of the Internal Revenue Code was enacted as part of the Social Security Amendments of 1965, "primarily because religious sects like the Old Order Amish provided for their own needy, independent of public or private insurance programs."  *Varga v. United*

*States*, 467 F. Supp. 1113, 1117 (D. Md. 1979) (citing S. Rep. No. 89-404, at 116 (1965)), *aff'd*, 618 F.2d 106 (table) (4th Cir. 1980).

The Supreme Court addressed Section 1402(g) in *United States v. Lee*, 455 U.S. 252 (1982), and the Court's reasoning applies equally to the religious exemptions in Section 5000A. The Supreme Court explained that, in Section 1402(g), "Congress has accommodated, to the extent compatible with a comprehensive national program, the practices of those who believe it a violation of their faith to participate in the social security system." *Id.* at 260. "Congress granted an exemption, on religious grounds, to self-employed Amish and others," and thus confined the exemption to "a narrow category which was readily identifiable." *Id.* at 260-61. "Self-employed persons in a religious community having its own 'welfare' system are distinguishable from the generality of wage earners employed by others." *Id.* at 261.

Courts of appeals likewise have emphasized that Section 1402(g) "does not discriminate among religions" but rather "accommodates, consistent with the goals of the Social Security system, those who oppose Social Security on religious grounds." *Droz v. Comm'r, IRS*, 48 F.3d 1120, 1124 (9th Cir. 1995) (citing *Lee*, 455 U.S. at 260-61); *Hatcher v. Commissioner*, 688 F.2d 82, 84 (10th Cir. 1979); *Jaggard v. Commissioner*, 582 F.2d 1189, 1189-90 (8th Cir. 1978)); *see also Olsen v. Commissioner of Internal Revenue*, 709 F.2d 278 (4th Cir. 1983) (rejecting a

-37-

minister's contention that the Free Exercise Clause entitled him to a

Section 1402(g) exemption even though his application for the exemption was

untimely).

      The religious accommodations in Section 5000A are equally permissible.

*See Liberty University*, 753 F. Supp. 2d at 637-41 (rejecting the Establishment

Clause challenge); *id*. at 643-45 (rejecting the claim that the exemptions deny

plaintiffs equal protection).  The exemptions do not "differentiate among bona fide

faiths in any relevant sense" and they ensure that "similarly situated groups are

treated similarly."  *Id*. at 639 (quotation marks and citation omitted).  "By its

terms, the religious conscience exemption applies to all members of all recognized

faiths that have a sincere, conscientious objection to receiving medical benefits."

*Ibid*.  "Plaintiffs in this case have no such objection, and therefore cannot claim

that they are burdened in the same way that the religious conscience exemption

contemplates."  *Ibid*.

      For substantially the same reasons, the health care sharing ministries

exemption is a permissible accommodation of religion.  *See id*. at 641.  Congress

clearly has authority to limit the exemption to members of organizations that have

an established record of providing medical care for their members.  *See ibid*.

(noting the similar limitation in Section 1402(g)).

-38-

## CONCLUSION

The judgment of the district court should be vacated for lack of jurisdiction or, alternatively, affirmed on the merits.

Respectfully submitted,

STUART F. DELERY
  *Acting Assistant Attorney General*

TIMOTHY J. HEAPHY
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

 /s/ Alisa B. Klein
ALISA B. KLEIN
MARK B. STERN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

APRIL 2013

**CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R.

App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New

Roman, a proportionally spaced font.  I further certify that this brief complies with

the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,780

words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii),

according to the count of Microsoft Word.


/s/ Alisa B. Klein
ALISA B. KLEIN

-40-

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2013, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. I further certify that I will cause 8 hard copies of the brief to be sent to this Court by Federal Express, overnight delivery. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Alisa B. Klein
ALISA B. KLEIN